UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 22-041-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| VICTORIA CLOUD, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

Defendants Victoria Cloud and Anthony Whigham are charged with: (1) conspiring to possess with the intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) aiding and abetting each other in knowingly and intentionally possessing with the intent to distribute 50 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

The United States filed four motions *in limine* in advance of trial.  Through these motions, it seeks an advanced ruling regarding: (1) the admissibility of an audio/video recording and use of a corresponding transcript for the jury; (2) preclusion of testimony or evidence regarding potential punishment; (3) the admissibility of certain documents as business records; and (4) the admissibility of two summary charts.  [Record Nos. 68-71] Defendant Whigham also has filed a motion *in limine* to prevent the United States from seeking to introduce evidence relating to: (1) his parole status at the time he allegedly committed the offenses charged in the indictment; and (2) other bad acts evidence.  [Record No. 72] Finally, Defendant Cloud filed a motion *in limine* to exclude introduction of evidence concerning prior

marijuana brokerage between Defendant Whigham and an individual associated with Cloud. She contends that the introduction of such evidence would be more prejudicial than probative under Federal Rule of Evidence 403.  [Record No. 74]

To allow effective trial preparation, the Court will address these issues in advance of the hearing presently scheduled for Monday, August 1, 2022.  More specifically, the Court will grant the United States' motions, deny Defendant Cloud's motion, and grant, in part, and deny, in part, Defendant Whigham's motion.  The August 1 hearing will be converted to a pre-trial conference.

**I**.

i.    <u>Recordings and Transcripts</u>

The United States seeks a determination regarding the admissibility of an audio/video recording of the defendants and if further seeks to provide a transcript of the recording to the jury while the recording is being played.  [Record No. 68] Regarding this issue, it intends to offer an audio/video recording of a phone call between Whigham and Cloud was made during the execution of a search warrant at Cloud's residence.  Further, the government seeks to provide the jury with a transcript of the call while the recording is being played.  The United States asks that the Court determine whether the transcript constitutes an accurate representation of the audio/video recording and whether it may be shown to the jury.  Whigham responds that the audio/video recording has not been properly authenticated and the government's request to present the transcript is premature.  [Record No. 81]

An audio recording may only be admitted if the recording is authentic, accurate, trustworthy, and "sufficiently comprehensible for the jury to consider the contents." *United States v. Wesley*, 417 F.3d 612, 620 (6th Cir. 2005) (internal quotation marks omitted).

Additionally, a proper foundation must be laid through either the chain of custody or other testimony that "could be used to establish the accuracy and trustworthiness of the evidence." *United States v. DeJohn*, 368 F.3d 533, 542 (6th Cir. 2004).

A transcript may only be used if it is reliable. *United States v. Wilkinson*, 53 F.3d 757, 762 (6th Cir. 1995). "Where a party seeks to use a transcript at trial, the ideal means of testing the transcript's accuracy is to have the parties stipulate to a transcript." *Id*. But "if the parties dispute the contents of a tape, the second best method is for the trial court to make a pretrial determination of accuracy by reading the transcript against the tapes." *Id*.; *see also United States v. Robinson*, 707 F.2d 872, 875-79 (6th Cir. 1983).

However, "[t]he fact that the tape has some unintelligible portions does not automatically render the entire recording inadmissible." *Wesley*, 417 F.3d at 621. In *Wesley*, the Sixth Circuit affirmed the admission of an audio tape and the use of a transcript by the jury because the audible portions on the audio were comprehensible and "inaudible portions were not so substantial as to render the whole recording untrustworthy." *Id*.

Here, there are one or two words that are unintelligible at 0:58, and then the transcript seems to be missing the "and I won't" that Detective Johnson says at 1:50-1:52.[1] The rest of the audio is audible and comprehensible, and the transcript accurately reflects the rest of the

---

[1] The United States asks the Court to listen to the tape and determine whether the transcript is accurate because Whigham does not agree to stipulate to the accuracy of the transcript. The Court has listened to the recording and compared it against the transcript. [U.S. Ex. 6c, 6d] The Court concludes that the transcript is generally an accurate transcription of the audio/video recording, except for two lines of the transcript. First, the transcript states: "SinQue: What's the." And at 0:58 on the recording, the Court can hear "What's the . . .," but then it is inaudible. It would seem that Whigham adds an additional word or two. Further, when Detective Johnson mutes the phone at 1:44-1:52, he appears to state: "Just tell him to come get 'em and I won't. . .," but the transcript indicates: "Just tell him to come get em."

conversation.  If the underlying audio recording is properly authenticated and otherwise admissible, the jury should be allowed to use the transcript as an aid.  Accordingly, the United States' motion *in limine* [Record No. 68] will be granted.

      ii.    <u>Evidence of Punishment</u>

Next, the United States seeks to preclude the defendants from introducing evidence or cross-examining witnesses regarding statutory penalties for drug trafficking, including portions of a body-worn camera video that contains law enforcement officers discussing the penalties for methamphetamine trafficking.  [Record No. 69] It seeks to include portions of body-worn camera footage wherein law enforcement officers recite text messages between Cloud and Whigham, but on the same footage officers discuss the statutory penalties for trafficking methamphetamine.  Accordingly, the government requests that portions of the video discussing potential penalties not be shown to the jury.

Whigham responds that he does not intend to offer direct evidence to the jury about the penalties that he and Cloud face but contends that the Court should not limit his ability to cross-examine the government's witnesses regarding counsel's interrogation.  As a general matter, Whigham argues that he has a constitutional right to confront the witnesses against him.  He asserts that one way to test the veracity of Cloud's statements is to discuss the threats, including the threat of a mandatory minimum sentence of incarceration, made to implicate Whigham.

A jury is explicitly prohibited from considering possible punishment in determining whether the defendants are guilty.  *See* Sixth Circuit Pattern Instructions § 8.05(2); *see also United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999) (affirming the decision of the trial court to grant the government's motion *in limine* to exclude discussion of potential penalties).  And while Whigham contends that not being able to cross-examine the witnesses

offered against him about their comments regarding the punishment Cloud may face if convicted violates his right to confront the witnesses under the Sixth Amendment, he is not hindered from cross-examining the witnesses concerning their conversations with Cloud. Instead, the government merely asks that Whigham not address specific statutory penalties. Thus, Whigham could ask whether the witnesses made comments about a potential conviction and punishment, without addressing specific statutory penalties. The Court concludes that limiting counsel's questioning to avoid discussing specific statutory penalties does not hinder the defendant's right to confront the witnesses who may offer testimony against his interests.

Based on the foregoing analysis, the Court will grant the United States' motion *in limine* to preclude the defendants from introducing evidence or cross-examining witnesses regarding the statutory penalties for drug trafficking. [Record No. 69]

### iii.    Documents Offered as Business Records

The United States seeks to admit ISP subscriber information, toll records, and Avis/Budget Rental Car records under Federal Rules of Evidence 803(6) and 902(11). [Record No. 70] Defendant Whigham did not originally stipulate to either the authenticity or the admissibility of these documents. However, he now concedes in his response to the motion *in limine* that the certifications comply with Federal Rules of Evidence 803(6) and 902(11).

Federal Rule of Evidence 803(6) states that business records are not excluded by the rule against hearsay as long as:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6); *see also United States v. Ramer*, 883 F.3d 659, 677-78 (6th Cir. 2018). Additionally, Federal Rule of Evidence 902(11) states that "an original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by the certification of the custodian or another qualified person" is self-authenticating and does not require extrinsic evidence to be admitted.

The United States proffers that the defendants have been provided all the records and certificates of authenticity so that they have had the opportunity to challenge them. The defendants have not indicated that there are any grounds to challenge the authenticity or admissibility of the records provided that a proper foundation is provided and the records are otherwise relevant.

The certificates of authenticity included with the records from Windstream and Avis/Budget Rental Car state: (1) the records are true and correct copies and the custodian is familiar with how they were created, managed, stored, and retrieved; (2) it was a regular business practice to make and maintain the records; (3) the records were made at or near the time of the events reflected; and (4) the records were made by, or from information transmitted by, a person with knowledge of the events. [U.S. Ex. 2, 8]

Additionally, the certificates of authenticity from the custodians of the records at T-Mobile provide that their records are duplicates of the originals and are true and complete copies of the records. [U.S. Ex. 9, 11] Additionally, such records were made at or near the time of the occurrence of the matters set forth by (or from information transmitted by) a person

with knowledge of those matters, the records were kept in the course of regularly conducted business activity, and it is a regular practice of T-Mobile to make such records.

Similarly, the certificate of authenticity for the AT&T toll records states that the records were true duplicates of the originals, and the legal compliance analyst creating the certificate of authenticity was familiar with how the records were created, managed, stored, and retrieved. Further, the records were made at or near the time of the occurrence, by a person with knowledge, or from information transmitted by a person with knowledge. The records were created as a regular business practice and kept in the ordinary course of business at AT&T. [U.S. Ex. 10, p. 24]

Based on the certificates of authenticity and Defendant Whigham's concession, all of the business records satisfy Rule 803(6) and Rule 902(11). They are admissible, if relevance is established during trial. Accordingly, the United States' motion *in limine* to admit business records will be granted. [Record No. 70]

    iv.   <u>Summaries</u>

Next, the United States seeks to admit summary charts of toll records during trial. [Record No. 71] Specifically, it seeks to introduce the toll records of four phone numbers associated with the defendants for the time period charged in this matter, together with two charts summarizing that information. The government asserts that the records are voluminous, could not be deciphered by the jury at the trial, and were provided to the defendants in discovery. But Whigham claims that the United States has not demonstrated how the summaries accurately summarize the documents in a correct and non-misleading manner. He further contends that "the information is not embellished or annotated with the conclusion of or inferences drawn by the proponent." [Record No. 81, p. 4]

- 7 -

Rule 1006 of the Federal Rules of Evidence allows a proponent to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." There are five requirements to admit a summary exhibit into evidence:

> (1) the underlying documents must be so voluminous that they cannot be conveniently examined in court, (2) the proponent of the summary must have made the documents available for examination or copying at a reasonable time and place, (3) the underlying documents must be admissible in evidence, (4) the summary must be accurate and nonprejudicial, and (5) the summary must be properly introduced through the testimony of a witness who supervised its preparation.

*United States v. Jamieson*, 427 F.3d 394, 409 (6th Cir. 2005) (citing *United States v. Modena*, 302 F.3d 626, 633 (6th Cir. 2002)).

The United States asserts that the records are voluminous and could not be deciphered by the jury at the trial, but it has provided the records to the defendants in discovery. The toll records are 723 pages, 2,736 pages, and 3,107 pages, respectively. [U.S. Ex. 9, 10, 11] Specifically, the government seeks to present a chart of the toll records on August 9 and 10, 2021, in a condensed fashion, and a second chart that summarizes the number of contacts between the four numbers at issue in this matter for the duration of the conspiracy. It notes that it intends to introduce the toll records underlying both charts.

Here, the underlying documents are voluminious and the documents were previously made available to the defendants in discovery. Additionally, they are admissible as business records and the summaries appear to accurately summarize the underlying material without embellishment or annotations. *United States v. Bray*, 139 F.3d 1104 (6th Cir. 1998). The United States did not indicate who would testify about the summaries. However, assuming

that the summaries are properly authenticated, all factors for introduction are met. Accordingly, the United States' motion *in limine* will be provisionally granted.

      v.    <u>Whigham's Bad Acts Evidence</u>

Whigham has moved to exclude under Rule 404(b) of the Federal Rules of Evidence testimony or other evidence regarding: (1) his parole status at the time of the indictment; and (2) his bragging about previously killing or injuring a third party. [Record No. 72] Relatedly, the United States has submitted a notice under Rule 404(b) that it intends to submit evidence from Whigham's parole officer about his parole status and biographical information. [Record No. 77]

Rule 404(b) prohibits the use of evidence of any other crime, wrong, or act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, the evidence may be used for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). In determining whether evidence of prior bad acts should be admitted, the Court must: "(1) make a preliminary determination that enough evidence exists that the prior act actually occurred; (2) determine whether the other acts evidence is being offered for a proper purpose under Rule 404(b); and (3) determine whether the other acts evidence is more prejudicial than probative under Federal Rule of Evidence 403." *Ramer*, 883 F.3d at 669.

The United States argues that Whigham's parole status and biographical information he provided to his parole officer constitute intrinsic evidence of the drug trafficking charges in this case. There is an exception to Rule 404(b) for "intrinsic" evidence, meaning "background" evidence or evidence necessary to complete the story. *United States v. Sumlin*, 956 F.3d 879,

889-90 (6th Cir. 2020). The Sixth Circuit has explained that this type of "background evidence:"

> has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*Id*. at 890 (quoting *United States v. Hardy (Marlondo)*, 228 F.3d 745, 748 (6th Cir. 2000)).

The United States notes that, at the time of the charged offense, Whigham was on parole in Michigan for a 2018 felony drug conviction. It proffers that Whigham was stopped in Gallia County, Ohio, and charged with a drug offense under the name "Anthony Carlos SinQue Whigham." He was later released on parole in October 2020. The government contends that the information it seeks to introduce is not evidence of Whigham's bad acts while on parole but, instead, relates to Whigham's personal information, including his phone number and address.

Specifically, the government seeks to introduce through Whigham's parole officer that Whigham has previously been identified as Sin Que and other nicknames that helps prove his identity in this case. Additionally, his parole officer will likely testify regarding the phone number he used to communicate with Whigham (313-739-7588) and his address, which were both on file for the rented vehicle seen at Cloud's residence on August 9, 2021. Further, the phone number is subscribed to a female with the same name as Whigham's wife. And the parole officer has knowledge regarding Whigham's wife. The United States argues that this information is intrinsic to the crimes charged because the phone number was used to track the delivery of the postal packages delivered to Cloud's residence on August 10, 2021. Finally, Whigham's parole officer is expected to testify that Whigham did not have legitimate

employment during the time of the charged offense that would allow him to spend between $1500.00 and $2000.00 a month to rent SUVs.

This evidence is directly probative of the charged offense and may be offered to identify Whigham. Whigham's status on parole and his relation to his parole officer are necessary to complete the story. Accordingly, Whigham's motion *in limine* will be denied to the extent he seeks to exclude evidence that he was on parole at the time of the charged offense. His biographical information may be provided by his parole officer.

Alternatively, the United States argues that information regarding the 2017 traffic stop that led to Whigham's conviction and parole status is admissible under Rule 404(b) because it demonstrates identity, intent, knowledge, and absence of mistake.[2] It asserts that the 2017 stop leading to the 2018 drug conviction, while not identical to the current offense, is recent and probative of Whigham's intent, knowledge, and absence of mistake to traffic in controlled substances. In response, Whigham correctly notes that, for use such a prior conviction to demonstrate intent, the evidence must relate "to conduct that is substantially similar and reasonably near in time to the specific intent at issue." *United States v. Hardy*, 643 F.3d 143, 151 (6th Cir. 2011). But the Sixth Circuit has also "repeatedly recognized that prior drug-distribution evidence is admissible under Rule 404(b) to show intent to distribute." *Id*. (citing *United States v. Ayoub*, 498 F.3d 532, 548 (6th Cir. 2007)). Further, evidence of prior-drug distribution also is admissible to show knowledge. *United States v. Cordero*, 973 F.3d 603, 621 (6th Cir. 2020). The Court in *Hardy* cited with approval *United States v. Myers*, 123 F.3d

---

[2] However, in its response, the government states that it "does not intend to present evidence of Whigham's parole violations or involvement in violent offenses in its case-in-chief." [Record No. 84]

350 (6th Cir. 1997), wherein evidence of prior drug transactions that occurred four years prior to the charged offense was admissible to show identity and intent to distribute. 643 F.3d at 152.

Here, the 2017 traffic stop involved Whigham being pulled over in a rental truck, in possession of two cell phones and 65 grams of crack cocaine. The defendant informed law enforcement that he was "Sin Que," and he was traveling to Lexington, Kentucky from Michigan to go trail riding. Additionally, the phone number provided to law enforcement was the same cell phone number as his wife's number. The government asserts that Whigham's identification as Sin Que, use of a rental truck, and stated intent to travel to Lexington tends to prove his identity in the current scheme. Additionally, the United States contends that "his previous travel on the interstate with a distributable quantity of drugs and in possession of multiple cell phones tends to prove that his communications with Cloud and presence in Lexington from Michigan were related to drug trafficking." [Record No. 77]

But as the defendant correctly points out, his previous drug conviction was not part of the current alleged conspiracy and did not share any co-conspirators, nor did either offense share the same *modus operandi*. Additionally, the current scheme involves sending methamphetamine through the mail system, whereas his previous conviction involved transporting crack cocaine in a rented truck. Finally, the Ohio arrest was over four years ago. It is questionable whether evidence of his prior conviction can be properly admitted under Rule 404(b). However, even if it can, the probative value is substantially outweighed by unfair prejudice.

To summarize, the biographical and identification information from Whigham's parole officer and his status on parole can be properly admitted as intrinsic evidence of the current

offense.  However, details of his prior traffic stop and conviction will be excluded at this time.[3]

Accordingly, Whigham's motion *in limine* will be granted, in part, and denied, in part.

        vi. Cloud's Bad Act Evidence

        Finally, Defendant Cloud filed a motion *in limine* seeking to exclude any evidence of a

prior marijuana brokerage between Defendant Whigham and an individual that Cloud knew.

The United States filed a notice of intent under Rule 404(b). indicating that it seeks to introduce

evidence of Cloud's acceptance of packages and brokering of controlled substance transactions

during the time alleged in the indictment.

        Cloud does not challenge the evidence under Rule 404.  Instead, she contests the

admissibility of the evidence under Rules 401 and 403.  Rule 401 states that "[e]vidence is

relevant if: (a) it has any tendency to make a fact more or less probable than it would be without

the evidence; and (b) the fact is of consequence in determining the action.  Rule 403 states that

a court "may exclude relevant evidence if its probative value is substantially outweighed by a

danger of . . . unfair prejudice."  Fed. R. Evid. 403.

        In this case, the evidence the government seeks to introduce is relevant to show that the

defendants were involved in trafficking in controlled substances.  Brokering a marijuana

transaction is relevant to show that Cloud agreed to be involved in a scheme to possess with

intent to distribute a controlled substance, albeit a different controlled substance than the one

---

[3] The United States does not include in its notice of intent potential evidence that Whigham bragged about previously killing someone and that he had broken another person's leg over a drug debt.  Rule 404(b)(3) requires that a prosecutor provide written notice that it intends to offer such evidence at trial.  Accordingly, to the extent the United States seeks to enter evidence of Whigham bragging about killing someone and breaking another individual's leg, the motion *in limine* will be granted.

charged in the indictment. It also helps contextualize how the defendants knew each other.
The evidence of previous marijuana brokerage is probative of Cloud's intent to be involved in
a drug trafficking scheme and knowledge of the scheme and what the packages delivered on
August 10 contained. Additionally, the probative value of Cloud's prior drug brokerage is not
substantially outweighed by the danger of unfair prejudice. Thus, Cloud's motion *in limine* to
exclude evidence of her prior marijuana brokerage will be denied.

## II.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.    The United States' motion *in limine* to determine the admissibility of an
audio/video recording and use of the transcript at trial [Record No. 68] is **GRANTED**.

2.    The United States' motion *in limine* to preclude evidence of punishment [Record
No. 69] is **GRANTED**.

3.    The United States' motion *in limine* to admit documents as business records
[Record No. 70] is **GRANTED**.

4.    The United States' motion *in limine* to admit summary charts into evidence
[Record No. 71] is **PROVISIONALLY GRANTED.**

5.    Defendant Anthony Whigham's motion *in limine* to exclude certain bad acts
evidence [Record No. 72] is **GRANTED**, in part, and **DENIED**, in part. The biographical and
identification information from Whigham's parole officer, as well as his status on parole, will
be admissible as intrinsic evidence. However, details about Whigham's prior traffic stop and
conviction, as well as evidence of him bragging about killing someone and breaking another
person's leg is excluded at this time.

6.      Defendant Victoria Cloud's motion *in limine* to exclude bad acts evidence [Record No. 74] is **DENIED**.

7.      This matter is scheduled for a pre-trial conference on **Monday, August 1, 2022, at 3:00 p.m.**, at the United States Courthouse in Lexington, Kentucky.

Dated: July 28, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky